No. 6.—SUSAN A. PINCKARD, plaintiff in error, *vs.* JOHN PINCKARD, defendant in error.

It is no sufficient reply to an application for temporary alimony by the wife, pending a libel for divorce, that the husband has made provision for her maintenance, and will do so in future.

Libel for Divorce, from Monroe Superior Court. Decision by Judge GREEN, at September Term, 1856.

The plaintiff in error, filed her libel in the Superior Court of Monroe county, for a partial divorce from her husband, John Pinckard, the defendant in error.

Pending the action, plaintiff's counsel made a motion for an order to grant libellant temporary alimony *pendente lite,* and for counsel fees.

The pendency of the suit and marriage of the parties were admitted by the respondent, but he offered testimony to prove that he had provided libellant with board, clothing, and support; to the introduction of which libellant's counsel objected. The Court overruled the objection, and libellant excepted.

*James H. Dumas*, after being examined in chief by respondent's counsel, as to board paid to him by respondent for his wife, was turned *over to* libellant's counsel, who proposed to ask witness if respondent had not defamed the character of his wife, to which question counsel for respondent objected; the Court sustained the objection and libellant excepted.

The testimony being closed, his Honor the presiding Judge refused the motion for alimony, but allowed libellant one hundred dollars for counsel fees. To which decision counsel for libellant excepted.

TRIPPE, for plaintiff in error.

GIBSON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This was a libel for divorce, brought by the wife against the husband. Application was made by the wife for temporary alimony and lawyer's fees. The Court allowed the last, but refused the first, upon the ground, that the husband had made provision for the support of the wife.

We do not consider this a good reply, in bar of the application.

Where the wife has a separate estate, sufficient to maintain herself, alimony will not be allowed. In all other cases, the uniform practice has been for the Court to direct a suitable sum to be paid quarterly, semi-annually or yearly; and the fund to be placed in the hands of the wife, uncontrolled by the husband; and in the opinion of this Court, it would

be unwise to depart from this well settled practice.    Alienated in feeling as the parties always are, it would lead to endless altercation and confusion to adopt the course here proposed.    And the record before us illustrates most strikingly, the truth of this opinion.    There is a suit now pending, at the instance of Mr. Sanford, against the husband, for a bill of goods furnished the wife, which the merchant considered necessary, but which the husband refuses to pay.    Look at the letter written by the husband to Mrs. Mary A. Bean, the lady with whom the wife was boarding!    "I now hope for the future, never to have any communication with any person she (his wife) can enlist in her infamous course, or give her shelter or protection."    Should the maintenance of the wife be entrusted to the judgment of a husband thus exasperated against her, with or without cause?

To avoid all this bitterness and bickering, not only adding to the wretchedness of the parties themselves, but embroiling the whole community, and enlisting them in the unhappy controversy, is it not best for both parties, even the husband himself, that the Court should fix the amount, and let it be paid over directly to the wife, to be disposed of as she may see fit; and thus put an end to this superadded source of vexation and strife?    If the wife waste or misapply the allowance thus appropriated, it will be her misfortune.

In this case, in adjusting the alimony, the Court should look to what has been heretofore advanced by the husband, which should be allowed—as a credit against any *past* alimony which may be decreed.

Judgment reversed.