No. 34.—ROBERT C. MAYS, plaintiff in error, *vs.* PLEASANT M. COMPTON, defendant in error.

[1.] Where seven years have elapsed, and no return been made by the proper officer upon a judgment or the execution issuing thereon, the same will be held dormant, notwithstanding the pendency of litigation in the meantime between the plaintiff and one of the defendants, the other claiming the benefit of the bar, being no party to said proceedings, and the same being prejudical to his interests.

[2.] A transaction between *two* parties in a judicial proceeding will not bind a *third* person, who is neither in fact nor in consideration of law, party or privy.

Affidavit of illegality, in Butts Superior Court. Heard and decided by Judge STARKE, at Chambers.

At March Term, 1840, Robert C. Mays obtained judgment against Pleasant M. Compton and Thomas C. Taylor, in Butts Superior Court, for the sum of $846.91, on a note made by Isaac Low, Pleasant M. Compton and Thomas C. Taylor. Low was not sued. At the time of the trial there was a special plea filed by Taylor, (which was the only one

filed) that Compton was security for Low, and he, Taylor, security for both Low and Compton on the note. A collateral issue was ordered, tried and found in favor of Compton, or rather against them as joint securities. Execution was issued on the judgment in favor of Mays, and he collected one half of the amount from Compton, and sent the *fi. fa.* to the County of Pike, to collect the other half from Taylor. The Sheriff of Pike, Joseph H. Shivers, levied the *fi. fa.* upon certain personal property of Taylor, and after the levy Taylor filed his bill in Pike Superior Court, charging that Compton had received a large amount of assets sufficient to pay the debt, before the rendition of the judgment or commencement of the suit; that when suit was brought by Mays (who knew this fact,) Taylor employed counsel to file a plea of usury, which he was ready to sustain by proof that in consideration of withholding this plea, Mays agreed that he would not attempt to enforce the judgment against Taylor, until Compton proved insolvent. In consequence of which agreement, the plea was not filed. Mays however, in violation of his agreement, it was alleged, had failed to enforce his judgment against Compton, who was able to pay it. The bill further charged fraud and collusion between Mays and Compton, to swindle and harrass Taylor. The bill prayed an injunction against Mays until he complied with the agreement.

Mays in his answer denied the agreement and every other equtable circumstance charged, and thereupon the injunction was dissolved and the execution ordered to proceed.

By a supplemental bill, and a subsequent amendment thereto, Taylor alleged that since the dissolution of the injunction, he had paid off the judgment, and prayed that the cause might be heard, and if the answer should be found to be untrue, that the money paid by him might be refunded. He further charged that the whole of the judgment was for usurious interest, and prayed that the judgment be opened and declared satisfied.

Pending the appeal (a judgment having been confessed and appeal taken,) Mays filed a plea to the jurisdiction of the

Court, alleging that he was not and never had been a citizen of Pike County.

Upon the trial, the defendant, Mays, moved to dismiss the bill, upon the following, among other grounds :

"Because Pleasant M. Compton, should have been made a party."

"Because the case made by the complainant's bill did not entitle him to the relief prayed for."

The Court overruled the motion, and the cause was by a writ of error carried to the Supreme Court, at August Term, 1849, at Decatur. The Supreme Court reversed the judgment, on the ground that the Court below erred in " charging the Jury that the judgment rendered in the County of Butts, in favor of Mays against Compton and Taylor, might be opened and impeached for usury," and remanded the cause, with the following instructions: " It is considered and adjudged by the Court, that the judgment of the Court below be reversed, on the ground that there was error in deciding that the judgment in the County of Butts could be inquired into and impeached for usury in the note upon which it was founded, and that a new trial be had in the cause."

" It is also the judgment of this Court, that the complainant is entitled, according to the case made by his bill, to have the money paid by him on the execution in the pleadings mentioned refunded with interest, and that said execution be opened to the extent of such payment, so as to enable the defendant to proceed to collect the same out of Compton, provided that the same can be collected out of him, and if not, then to be collected out of the complainant, according to the agreement in the record mentioned."

At the February Term, 1851, of Pike Superior Court, a trial was had on the bill, and the Jury decided, " that the defendant, Mays, pay over to complainant, Taylor, $52.600, with interest from November 1st, 1842, and also that the execution obtained in the County of Butts, be opened against Pleasant M. Compton until all his means are exhausted, and

Mays *vs.* Compton.

then if not satisfied to return with full force against Thomas C. Taylor."

This decree was satisfied and paid off by Mays. The execution obtained by Mays in the County of Butts, carried no entry from November 1st, 1842, to July 29th, 1851, when it was then levied upon the property of Compton.

To the execution Compton filed an affidavit of illegality, upon the grounds,

1st. Because the *fi. fa.* is barred by the Statute of Limitations, as no return has been made on the same within seven years, by any officer legally authorized so to do.

2d. Because, from the entries on the *fi. fa.* it appears that the same is satisfied, and that subsequently, the *fi. fa.* has been re-opened, re-instated, and ordered to be in operation against deponent without due and legal notice to deponent, or by making deponent a party in the cause.

At Chambers, January 19th, 1853, by consent of parties, after argument had, Judge STARKE sustained the affidavit of illegality, and this decision is brought up for review.

McCUNE and HARMAN, for plaintiff in error.

R. HARDEMAN, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

We think this a clear case for the defendant in error.

[1.] At March Term, 1840, of the Superior Court of Butts County, Robert C. Mays obtained judgment against Pleasant M. Compton and Thomas C. Taylor, for the sum of $846.61, on a note made by Isaac Low, Pleasant M. Compton, and Thomas C. Taylor securities. Execution was issued in favor of Mays, and he collected one-half of the amount from Compton, and attempted to enforce the *fi. fa.* against Taylor for the other half. This was resisted by Taylor, on account of certain equities existing between Mays and himself. And although he was compelled to advance his moiety of the debt,

Mays vs. Compton.

which he did on the first of November, 1842, yet Mays was finally decreed to refund the amount so paid by Taylor.

Mays now proposes, in 1851, when more than seven years have elapsed, to levy his execution upon Compton's property; and that too under the pretended authority of a decree, rendered in Pike County, in the 'Chancery proceeding, between Taylor and himself, and to which Compton was no party. And upon Compton's claiming the protection of the Dormant Judgment Act, he is met with this response, "It is true, that so far as you are concerned, no effort has been made to collect this debt; but the case has been in litigation in the Courts, and that will prevent the bar of the Dormant Judgment Act from intervening for your benefit."

To all of which the obvious reply, on the part of Compton, is, "The diligence to which you refer, was a matter not only wholly between yourselves, but was adverse to my rights and interest. Taylor and myself, when the original judgment was rendered in your behalf, against us jointly, interpleaded one another, as the record shows, and by a collateral issue then formally filed and regularly tried, it was solemnly settled, and found that it was not true, as Taylor subsequently set forth in his bill, that *he* was security for *me* as well as for Low; and further, that it was not true, as he therein and thereby represented, that before the rendition of the said judgment in your favor, or even the commencement of the suit, that I had received from Low, the principal, a large amount of assets sufficient to satisfy your demand. Our relation to this contract, as between us, was thenceforth no longer an open question. It was to all intents and purposes, and for all coming time, *res adjudicata*. We were *joint securities*. All this too, you knew. For you were party plaintiff to the record. You stood by, heard the proof, witnessed the trial, and entered up your judgment, in accordance with the finding 'of the Jury. And yet, upon the back of all this, to evade the illegal agreement which you made at the same time with Taylor, without my knowledge, to prevent him from pleading usury, which he swears in his bill he was prepared to do and prove, and thus

defeat *any* recovery in your behalf against either of us, the usurious interest, as he claimed, being sufficient to cover the whole amount of your judgment; in my absence, and in a proceeding to which I was no party, you come, relying on a decree awarded by a Court which it is acknowledged had no jurisdiction over me, to the effect that your execution is to be opened against me, and its payment pressed, until all my means are exhausted!

I deny the validity of your decree so far as I am concerned, and plant myself upon the time honored-maxim, *res inter aolis acta alteri nocere non debet.* A transaction between *two* parties ought not to operate to the prejudice of a *third.*"

[2.] We hold that this plea is unanswerable, and unhesitatingly sustain it. The Judges in the *Duchess of Kingston's Case,* (11 *Howell's State Trials,* 261,) say, " It is certainly true, as a general principle, that a transaction between *two* parties in judicial proceedings, ought not to be binding upon a *third* party. For, it would be unjust to bind a person who could not be admitted to make a defence, or to examine witnesses, or to appeal from a judgment which he might think erroneous, and therefore the deposition of witnesses in another cause in proof of a fact, the verdict of a Jury finding the fact, and the judgment of the Court upon facts found, although evidence against the parties and all claiming under them, are not to be used to the prejudice of others."

What is the situation of this case, then? The execution is dormant, unless kept alive by this Chancery proceeding between Taylor and Mays, and the decree against Compton. But he cannot be affected by either, because he was not actually nor in consideration of law, party or privy. And the same were prejudical to his interest. He is consequently entitled to stand upon all his legal rights.

If it be true, as alleged in Taylor's bill, but which statement was negatived by the verdict of the Jury upon the collateral issue, that Compton has received assets from Low, sufficient to pay Mays' debt, and for that purpose, then Equity would treat him as a trustee for the creditor. And as in-

timated by my brother WARNER (in 7 *Geo. Rep.* 238,) Mays would be entitled, upon the establishment of this fact, in a proceeding instituted by him against Compton, directly for this purpose, to obtain a decree for the balance of his debt, provided other obstacles be not interposed to defeat his recovery. What they are, or may be, it is not for me to suggest, lest it be invoked as *instructions* to control the judgment of the Court in a suit not yet brought, and which soon may be.

Judgment affirmed.